UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

_____

DALOUN CALHOUN,

                    Plaintiff,                         Case No. 1:26-cv-317

v.                                                     Honorable Sally J. Berens

UNKNOWN GAUDIO,

                    Defendant.
_____/

**OPINION**

This is a civil rights action brought by a state prisoner under 42 U.S.C. § 1983. In a separate

order, the Court granted Plaintiff leave to proceed *in forma pauperis*. Pursuant to 28 U.S.C.

§ 636(c) and Rule 73 of the Federal Rules of Civil Procedure, Plaintiff consented to proceed in all

matters in this action under the jurisdiction of a United States Magistrate Judge. (ECF No. 4,

PageID.11.)

This case is presently before the Court for preliminary review under the Prison Litigation

Reform Act, Pub. L. No. 104-134, 110 Stat. 1321 (1996) (PLRA), pursuant to 28 U.S.C.

§§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court is required to conduct this initial

review prior to the service of the complaint. *See In re Prison Litig. Reform Act*, 105 F.3d 1131,

1131, 1134 (6th Cir. 1997); *McGore v. Wrigglesworth*, 114 F.3d 601, 604–05 (6th Cir. 1997).

Service of the complaint on the named defendant is of particular significance in defining a

putative defendant's relationship to the proceedings. "An individual or entity named as a defendant

is not obliged to engage in litigation unless notified of the action, and brought under a court's

authority, by formal process." *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344,

347 (1999). "Service of process, under longstanding tradition in our system of justice, is fundamental to any procedural imposition on a named defendant." *Id.* at 350. "[O]ne becomes a party officially, and is required to take action in that capacity, only upon service of a summons or other authority-asserting measure stating the time within which the party served must appear and defend." *Id.* (citations omitted). That is, "[u]nless a named defendant agrees to waive service, the summons continues to function as the *sine qua non* directing an individual or entity to participate in a civil action or forgo procedural or substantive rights." *Id.* at 351. Therefore, the PLRA, by requiring courts to review and even resolve a plaintiff's claims before service, creates a circumstance where there may only be one party to the proceeding—the plaintiff—at the district court level and on appeal. *See, e.g.*, *Conway v. Fayette Cnty. Gov't*, 212 F. App'x 418 (6th Cir. 2007) ("Pursuant to 28 U.S.C. § 1915A, the district court screened the complaint and dismissed it without prejudice before service was made upon any of the defendants . . . [such that] . . . only [the plaintiff] [wa]s a party to this appeal.").

Here, Plaintiff has consented to a United States Magistrate Judge conducting all proceedings in this case under 28 U.S.C. § 636(c). That statute provides that "[u]pon the consent of the parties, a full-time United States magistrate judge . . . may conduct any or all proceedings . . . and order the entry of judgment in the case . . . ." 28 U.S.C. § 636(c). Because the named Defendant has not yet been served, the undersigned concludes that the defendant is not presently a party whose consent is required to permit the undersigned to conduct a preliminary review under the PLRA, in the same way the defendant is not a party who will be served with or given notice of this opinion. *See Neals v. Norwood*, 59 F.3d 530, 532 (5th Cir. 1995) ("The record

2

does not contain a consent from the defendants[; h]owever, because they had not been served, they were not parties to this action at the time the magistrate entered judgment.").[1]

Under the PLRA, the Court is required to dismiss any prisoner action brought under federal law if the complaint is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks monetary relief from a defendant immune from such relief. 28 U.S.C. §§ 1915(e)(2), 1915A; 42 U.S.C. § 1997e(c). The Court must read Plaintiff's *pro se* complaint indulgently, *see Haines v. Kerner*, 404 U.S. 519, 520 (1972), and accept Plaintiff's allegations as true, unless they are clearly irrational or wholly incredible. *Denton v. Hernandez*, 504 U.S. 25, 33 (1992). Applying these standards, the Court will dismiss Plaintiff's complaint for failure to state a claim.

## Discussion

### I.     Factual Allegations

Plaintiff is presently incarcerated with the Michigan Department of Corrections (MDOC) at the Ionia Correctional Facility (ICF) in Ionia, Ionia County, Michigan. The events about which he complains occurred at that facility. Plaintiff sues ICF Corrections Officer Unknown Gaudio in his official capacity. (Compl., ECF No. 1, PageID.2.)

Plaintiff alleges that on October 1, 2025, he was preparing to leave his cell for a healthcare callout. (*Id.*, PageID.3.) Plaintiff "fold[ed] his mattress . . . out of the way so staff could fully close the [cell] door," because he did "not [want to] receive a misconduct for [the] door being blocked

---

[1] *But see Coleman v. Lab. & Indus. Rev. Comm'n of Wis.*, 860 F.3d 461, 471 (7th Cir. 2017) (concluding that, when determining which parties are required to consent to proceed before a United States Magistrate Judge under 28 U.S.C. § 636(c), "context matters" and the context the United States Supreme Court considered in *Murphy Bros.* was nothing like the context of a screening dismissal pursuant to 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c)); *Williams v. King*, 875 F.3d 500, 503–04 (9th Cir. 2017) (relying on Black's Law Dictionary for the definition of "parties" and not addressing *Murphy Bros.*); *Burton v. Schamp*, 25 F.4th 198, 207 n.26 (3d Cir. 2022) (premising its discussion of "the term 'parties' solely in relation to its meaning in Section 636(c)(1), and . . . not tak[ing] an opinion on the meaning of 'parties' in other contexts").

or stopped or [for] misuse and destruction of state property."[2] (*Id.*) After the mattress was moved, Plaintiff claims that Defendant Gaudio "closed the cell door, smashing [Plaintiff's] head in it." (*Id.*) Plaintiff's "head was lodged in the door, with [Plaintiff] yelling for approximately five to seven seconds." (*Id.*) Plaintiff alleges that other prisoners were "laughing because [his] butt crack was exposed." (*Id.*) Plaintiff then "went to medical and filled out an incident report form . . . and filed a grievance, which was denied." (*Id.*) Plaintiff claims that the denial of his grievance "is standard operations for not resolving issues." (*Id.*)

Plaintiff further claims that on an unspecified date, "[d]ue to this incident [with his cell door, he] was in an altercation with some guys who were teasing [him], which brought back memories from [his] childhood being bullied." (*Id.*) Plaintiff "found a rock in the yard to protect [him]self because the guys were bigger than [him]." (*Id.*) Plaintiff alleges that during a cell search, at another unspecified date or time, "corrections officers found that rock, causing [him] to receive a Class 1 misconduct and go to the hole (segregation)." (*Id.*) Plaintiff concludes that "[t]his really traumatized [him] and [he has] never been scared of a door closing in [his] life." (*Id.*)

Based on the foregoing allegations, the Court construes Plaintiff's complaint to raise claims that his Eighth and Fourteenth Amendment due process rights were violated by Defendant Gaudio. Plaintiff seeks monetary damages and injunctive relief in the form of a "time / sentence reduction." (*Id.*, PageID.4.)

## II.    Failure to State a Claim

A complaint may be dismissed for failure to state a claim if it fails "to give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*,

---

[2] In this opinion, the Court corrects the punctuation, grammar, spelling, and abbreviations in quotations from Plaintiff's filings.

550 U.S. 544, 555 (2007) (quoting *Conley v. Gibson*, 355 U.S. 41, 47 (1957)). While a complaint need not contain detailed factual allegations, a plaintiff's allegations must include more than labels and conclusions. *Id.*; *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). The court must determine whether the complaint contains "enough facts to state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Although the plausibility standard is not equivalent to a "'probability requirement,' . . . it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* at 678 (quoting *Twombly*, 550 U.S. at 556). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—that the pleader is entitled to relief." *Id.* at 679 (quoting Fed. R. Civ. P. 8(a)(2)); *see also Hill v. Lappin*, 630 F.3d 468, 470–71 (6th Cir. 2010) (holding that the *Twombly/Iqbal* plausibility standard applies to dismissals of prisoner cases on initial review under 28 U.S.C. §§ 1915A(b)(1) and 1915(e)(2)(B)(ii)).

To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the federal Constitution or laws and must show that the deprivation was committed by a person acting under color of state law. *West v. Atkins*, 487 U.S. 42, 48 (1988); *Street v. Corr. Corp. of Am.*, 102 F.3d 810, 814 (6th Cir. 1996). Because section 1983 is a method for vindicating federal rights, not a source of substantive rights itself, the first step in an action under section 1983 is to identify the specific constitutional right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271 (1994).

#### A.     Official Capacity Claims

Plaintiff sues Defendant Gaudio in his official capacity only. (Compl., ECF No. 1, PageID.2.) A suit against an individual in his or her official capacity is equivalent to a suit against the governmental entity. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 71 (1989); *Matthews v. Jones*, 35 F.3d 1046, 1049 (6th Cir. 1994).

The states and their departments are immune under the Eleventh Amendment from suit in the federal courts, unless the state has waived immunity or Congress has expressly abrogated Eleventh Amendment immunity by statute. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98–101 (1984); *Alabama v. Pugh*, 438 U.S. 781, 782 (1978); *O'Hara v. Wigginton*, 24 F.3d 823, 826 (6th Cir. 1994). Congress has not expressly abrogated Eleventh Amendment immunity by statute, *Quern v. Jordan*, 440 U.S. 332, 341 (1979), and the State of Michigan has not consented to civil rights suits in federal court. *Abick v. Michigan*, 803 F.2d 874, 877 (6th Cir. 1986). Regardless, the State of Michigan (acting through the MDOC) is not a "person" who may be sued under section 1983 for money damages. *See Lapides v. Bd. of Regents*, 535 U.S. 613, 617 (2002) (citing *Will*, 491 U.S. at 66).

Here, Plaintiff seeks injunctive relief and monetary damages. (Compl., ECF No. 1, PageID.4.) However, as noted above, the MDOC is not a "person" who may be sued under section 1983 for money damages. *See, e.g.*, *Lapides*, 535 U.S. at 617. Similarly, Plaintiff may not seek monetary damages against Defendant Gaudio in his official capacity. *Will*, 491 U.S. at 71 ("We hold that neither a State nor its officials acting in their official capacities are 'persons' under § 1983.").

Although damages claims against Defendant Gaudio in his official capacity are properly dismissed, an official capacity action seeking injunctive or declaratory relief constitutes an exception to sovereign immunity. *See Ex parte Young*, 209 U.S. 123, 159–60 (1908) (holding that

the Eleventh Amendment immunity does not bar prospective injunctive relief against a state official). The United States Supreme Court has determined that a suit under *Ex parte Young* for prospective injunctive relief should not be treated as an action against the state. *Kentucky v. Graham*, 473 U.S. 159, 167 n.14 (1985). Instead, the doctrine is a fiction recognizing that unconstitutional acts cannot have been authorized by the state and therefore cannot be considered done under the state's authority. *Id.*

Nonetheless, the Supreme Court has cautioned that, "*Ex parte Young* can only be used to avoid a state's sovereign immunity when a 'complaint alleges an ongoing violation of federal law and seeks relief properly characterized as prospective.'" *Ladd v. Marchbanks*, 971 F.3d 574, 581 (6th Cir. 2020) (quoting *Verizon Md. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). Past exposure to an isolated incident of illegal conduct does not, by itself, sufficiently prove that the plaintiff will be subjected to the illegal conduct again. *See, e.g.*, *Los Angeles v. Lyons*, 461 U.S. 95 (1983) (addressing injunctive relief); *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127 (2007) (addressing declaratory relief). A court should assume that, absent an official policy or practice urging unconstitutional behavior, individual government officials will act constitutionally. *Lyons*, 461 U.S. at 102. In the present action, Plaintiff does not allege the existence of an official policy or practice, and Plaintiff's allegations relate solely to past harm, not future risk of harm. In fact, Plaintiff complains about events that occurred four months prior to him filing this complaint. Therefore, Plaintiff does not seek relief properly characterized as prospective. *See Ladd*, 971 F.3d at 581.

Accordingly, for these reasons, Plaintiff's claims against Defendant Gaudio in his official capacity will be dismissed for failure to state a claim. Because Plaintiff sues Defendant Gaudio in

7

his official capacity only, for this reason alone, Plaintiff's claims against Defendant are subject to dismissal.

Even setting aside the capacity issue and addressing the merits of Plaintiff's claims, as explained below, Plaintiff's claims are subject to dismissal for failure to state a claim.

### B.    Eighth Amendment Claims

#### 1.    Excessive Force

Plaintiff's complaint alleges that Defendant Gaudio "closed the cell door, smashing [Plaintiff's] head in it," and that Plaintiff's "head was lodged in the door, with [Plaintiff] yelling for approximately five to seven seconds." (Compl., ECF No. 1, PageID.3.) The Court construes these allegations as a claim that Defendant Gaudio used excessive force against Plaintiff.

As relevant to excessive force claims, the Eighth Amendment prohibits conditions of confinement which, although not physically barbarous, "involve the unnecessary and wanton infliction of pain." *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981) (quoting *Gregg v. Georgia*, 428 U.S. 153, 183 (1976)). Among unnecessary and wanton inflictions of pain are those that are "totally without penological justification." *Id.* However, not every shove or restraint gives rise to a constitutional violation. *Parrish v. Johnson*, 800 F.2d 600, 604 (6th Cir. 1986); *see also Hudson v. McMillian*, 503 U.S. 1, 9 (1992). "On occasion, '[t]he maintenance of prison security and discipline may require that inmates be subjected to physical contact actionable as assault under common law.'" *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (quoting *Combs v. Wilkinson*, 315 F.3d 548, 556 (6th Cir. 2002)). Prison officials nonetheless violate the Eighth Amendment when their "offending conduct reflects an unnecessary and wanton infliction of pain." *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011) (quoting *Pelfrey v. Chambers*, 43 F.3d 1034, 1037 (6th Cir. 1995)); *Bailey v. Golladay*, 421 F. App'x 579, 582 (6th Cir. 2011).

8

There is a subjective component and an objective component to Eighth Amendment claims. *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013) (citing *Comstock v. McCrary*, 273 F.3d 693, 702 (6th Cir. 2001)). First, "[t]he subjective component focuses on the state of mind of the prison officials." *Williams*, 631 F.3d at 383. Courts ask "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 7. Second, "[t]he objective component requires the pain inflicted to be 'sufficiently serious.'" *Williams*, 631 F.3d at 383 (quoting *Wilson v. Seiter*, 501 U.S. 294, 298 (1991)). The objective component requires a "contextual" investigation that is "responsive to 'contemporary standards of decency.'" *Hudson*, 503 U.S. at 8 (quoting *Estelle v. Gamble*, 429 U.S. 97, 103 (1976)). Although the extent of a prisoner's injury may help determine the amount of force used by the prison official, it is not dispositive of whether an Eighth Amendment violation has occurred. *Wilkins v. Gaddy*, 559 U.S. 34, 37 (2010). "When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated . . . [w]hether or not significant injury is evident." *Hudson*, 503 U.S. at 9.

Here, Plaintiff fails to allege sufficient facts to show that Defendant Gaudio acted with the maliciousness required for an Eighth Amendment claim. *See Hudson*, 503 U.S. at 7. Plaintiff alleges that he moved his mattress before the cell door closed and that after his head was stuck in the door, Plaintiff was "yelling for approximately five to seven seconds." (Compl., ECF No. 1, PageID.3.) The sole allegation against Defendant Gaudio is that he "closed the cell door." (*See id.*) This sole allegation is insufficient to even suggest that Defendant Gaudio knew that Plaintiff was near the cell door when Gaudio closed it. Plaintiff does not indicate, for example, whether Defendant Gaudio operated the cell door from a remote officer's station or from somewhere he could see Plaintiff either in-person or through a camera, or whether Defendant Gaudio could see

9

or hear Plaintiff's yelling. (*See id*.) Because Plaintiff does not allege any facts to suggest that Defendant Gaudio even knew that Plaintiff was near the cell door when Gaudio closed it, there are necessarily no facts alleged which indicate that the cell door closing or the exposure of Plaintiff's "butt crack" was intentional or sadistic. (*See id*.) In short, Plaintiff appears to ask the Court to fabricate plausibility to his claims from mere ambiguity; however, ambiguity does not support a claim. While Plaintiff's complaint alleges an experience that may have been painful, scary, and embarrassing, Plaintiff fails to show that Defendant Gaudio acted with the requisite state of mind for an Eighth Amendment excessive force claim.[3] For the foregoing reasons, the Court will dismiss Plaintiff's Eighth Amendment excessive force claims against Defendant Gaudio.

### 2.     Failure to Protect

The Court also construes Plaintiff's complaint to raise Eighth Amendment failure to protect claims against Defendant Gaudio. (*See generally* Compl., ECF No. 1.) Plaintiff alleges that, because he was caught in the cell door, other prisoners laughed at him. (*Id*., PageID.3.) Plaintiff claims he was subsequently "in an altercation with some guys who were teasing [him], which brought back memories from [his] childhood being bullied." (*Id*.) Plaintiff does not describe any injuries resulting from this altercation, but does claim that he "found a rock in the yard to protect [him]self because the guys were bigger than [him]." (*Id*.)

---

[3] Plaintiff's claim also fails under the objective prong of an Eighth Amendment claim for excessive force because it requires the pain inflicted to be "sufficiently serious." *Williams*, 631 F.3d at 383. Here, Plaintiff alleges no physical injuries relating to Defendant Gaudio's actions. (*See* Compl., ECF No. 1, PageID.3.) Although the extent of a prisoner's injuries are not dispositive of whether an Eighth Amendment violation has occurred, without any allegations of physical injury or allegations which show Defendant Gaudio acted maliciously or sadistically, Plaintiff's claim also fails under the objective prong required for an Eighth Amendment claim. *See Wilkins*, 559 U.S. at 37; *see also Hudson*, 503 U.S. at 9.

Inmates have a constitutionally protected right to personal safety grounded in the Eighth Amendment. *Farmer v. Brennan*, 511 U.S. 825, 833 (1994). Thus, prison staff are obliged "to take reasonable measures to guarantee the safety of the inmates" in their care. *Hudson v. Palmer*, 468 U.S. 517, 526–27 (1984). Because officials have "stripped [prisoners] of virtually every means of self-protection[,]" "officials have a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833. A prisoner does not need to prove that he has been the victim of an actual attack to bring a personal safety claim; however, he must at least show that he reasonably fears such an attack. *Thompson v. Cnty. of Medina*, 29 F.3d 238, 242–43 (6th Cir. 1994) (holding that plaintiff has the minimal burden of "showing a sufficient inferential connection" between the alleged violation and inmate violence to "justify a reasonable fear for personal safety").

For a prisoner to state an Eighth Amendment claim, he must show that he faced a sufficiently serious risk to his health or safety and that the defendant official acted with "'deliberate indifference' to [his] health or safety." *Mingus v. Butler*, 591 F.3d 474, 479–80 (6th Cir. 2010) (citing *Farmer*, 511 U.S. at 834); *see also Helling v. McKinney*, 509 U.S. 25, 35 (1993). This standard includes both objective and subjective components. *Farmer*, 511 U.S. at 834; *Helling*, 509 U.S. at 35–37. To satisfy the objective prong, an inmate must show "that he is incarcerated under conditions posing a substantial risk of serious harm." *Farmer*, 511 U.S. at 834. Under the subjective prong, an official must "know[] of and disregard[] an excessive risk to inmate health or safety." *Id.* at 837. Deliberate indifference is a higher standard than negligence and requires that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious

harm exists, and he must also draw the inference." *Id.*; *see also Bishop v. Hackel*, 636 F.3d 757, 766–67 (6th Cir. 2011).

Even though Plaintiff may very well have been traumatized by being caught in his cell door with other prisoners laughing at him, it does not necessarily follow that Plaintiff faced a substantial risk of further harm following that incident. *See Farmer*, 511 U.S. at 834. Plaintiff's complaint simply concludes that the later altercation was "due to this [cell door] incident" but contains no facts to show how the two incidents were connected, whether he sought protection, or if there were any threats or events that would indicate a substantial risk of further harm. (*See* Compl., ECF No. 1, PageID.3.)

Plaintiff's allegations also fail to satisfy the subjective prong. Plaintiff's complaint contains no facts to suggest that Defendant Gaudio knew that Plaintiff faced *any* risk of harm from other prisoners following the incident with Plaintiff's cell door, let alone that he knew Plaintiff faced a substantial risk of harm and disregarded it. Although Plaintiff emphasizes that he is "really traumatized . . . [and has] never been scared of a door closing in [his] life," (Compl., ECF No. 1, PageID.3), he has not connected that suffering to the deliberate indifference of Defendant Gaudio.

Under these circumstances, Plaintiff fails to state an Eighth Amendment failure to protect claim against Defendant Gaudio.

### C. Fourteenth Amendment Due Process Claims

#### 1. Issuance of the Misconduct Report and Placement in Segregation

After the incident with his cell door, Plaintiff claims that he was "in an altercation with some guys who were teasing [him]" and "found a rock in the yard to protect [him]self because the guys were bigger than [him]." (*Id.*) During a cell search, non-party corrections officers "found that rock, causing [Plaintiff] to receive a Class 1 misconduct and go to the hole (segregation)." (*Id.*) The Court construes these allegations to raise a claim that Plaintiff's due process rights under the

Fourteenth Amendment were violated as related to the misconduct report and his placement in segregation.

"The Fourteenth Amendment protects an individual from deprivation of life, liberty or property, without due process of law." *Bazzetta v. McGinnis*, 430 F.3d 795, 801 (6th Cir. 2005). To state a Fourteenth Amendment procedural due process claim, a plaintiff must show that one of these interests is at stake. *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). Analysis of a procedural due process claim involves two steps: "[T]he first asks whether there exists a liberty or property interest which has been interfered with by the State; the second examines whether the procedures attendant upon that deprivation were constitutionally sufficient . . . ." *Kentucky Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989) (citations omitted).

In *Sandin v. Conner*, the United States Supreme Court set forth the standard for determining when a state-created right creates a federally cognizable liberty interest protected by the Due Process Clause. 515 U.S. 472, 484 (1995). According to that Court, a prisoner is entitled to the protections of due process only when the sanction "will inevitably affect the duration of his [or her] sentence," or when a deprivation imposes an "atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Id.* at 486–87; *see also Jones v. Baker*, 155 F.3d 810, 812 (6th Cir. 1998); *Rimmer-Bey v. Brown*, 62 F.3d 789, 790–91 (6th Cir. 1995). In *Sandin*, the Court held that regardless of the mandatory language of the prison regulations, the inmate did not have a liberty interest because his placement in administrative segregation for thirty days did not constitute an atypical and significant hardship within the context of his prison life. *Sandin*, 515 U.S. at 484; *see also Mackey v. Dyke*, 111 F.3d 460, 463 (6th Cir. 1997). Without a protected liberty interest, a plaintiff cannot successfully claim that his due process rights were violated because "[p]rocess is not an end in itself." *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983).

13

Here, Plaintiff was issued a misconduct report because a rock was found in his cell, and he was placed into segregation. (Compl., ECF No. 1, PageID.3.) As an initial matter, Plaintiff does not allege any facts to suggest that Defendant Gaudio was involved in issuing or reviewing the misconduct report. *Iqbal*, 556 U.S. at 676 ("[A] plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). Additionally, Plaintiff does not indicate the ultimate outcome of the misconduct report, and he does not specify how long he was segregated or what other sanctions he received. (*See id.*)

To state a Fourteenth Amendment procedural due process claim, Plaintiff must show that the sanctions he received as a result of the misconduct conviction "inevitably affect[ed] the duration of [Plaintiff's] sentence" or imposed an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life." *Sandin*, 515 U.S. at 486–87. As an initial matter, because Plaintiff neither indicates how long he was placed in segregation nor what other sanctions he received as a result of the misconduct charge, he necessarily fails to show that he received any sanctions that implicate the Due Process Clause of the Fourteenth Amendment. Regardless, the sanctions available in the MDOC disciplinary scheme do not affect the duration of an inmate's sentence, and placement in segregation or non-bond status for a limited period of time or the receipt of the loss of privileges sanction do not constitute "atypical and significant hardship[s]," as contemplated by *Sandin*. *See, e.g.*, *Thomas v. Eby*, 481 F.3d 434 (6th Cir. 2007) (discussing that the loss of disciplinary credits under the MDOC's disciplinary scheme does not affect the duration of a prisoner's sentence); *Sandin*, 515 U.S. at 484 (holding that placement in segregation for 30 days does not impose an atypical and significant hardship); *Joseph v. Curtin*, 410 F. App'x 865, 868 (6th Cir. 2010) (finding that 61 days in segregation is not atypical and significant); *cf. Bazzetta*, 430 F.3d at 805 (concluding that a permanent, but reviewable, loss of visitation privileges did not

14

"rise[] to the level of egregious conduct necessary to implicate the implicit guarantees of the Due Process Clause" (citing *Overton v. Bazzetta*, 539 U.S. 126, 134 (2003))); *Argue v. Hofmeyer*, 80 F. App'x 427, 429 (6th Cir. 2003) (finding that prisoners have no constitutional right to rehabilitation, education, or jobs). Therefore, Plaintiff has failed to show that he received any sanctions for these misconduct charges that impacted the duration of his sentence or that his placement in segregation after the assault constituted an "atypical and significant hardship." *Sandin*, 515 U.S. at 486–87.

Moreover, even if Plaintiff had alleged the loss of a protected liberty interest, he would not state a due process claim because he fails to show that he did not receive all the process due to him. *See generally Wolff v. McDonnell*, 418 U.S. 539 (1974) (setting forth the minimum process required for prison disciplinary proceedings that implicate a liberty interest). Due process of law gives the person the opportunity to convince an unbiased decision maker that, for example, he has been wrongly or falsely accused or that the evidence against him is false. That is, the right to due process protects Plaintiff's ability to *respond* to spurious charges. It does not include the right to *prevent* or *prevail* on such charges. *See Zinermon v. Burch*, 494 U.S. 113, 125 (1990).

Accordingly, for the reasons set forth above, Plaintiff fails to state any Fourteenth Amendment procedural due process claims against Defendant Gaudio regarding his misconduct charge and his placement in segregation.

### 2. Prison Grievance Procedure

Plaintiff alleges that he filed a grievance after Defendant Gaudio closed the cell door while his "head was lodged in the door with [him] yelling for approximately five to seven seconds." (Compl., ECF No. 1, PageID.3.) Plaintiff claims that his grievance was denied and that such denial "is standard operations for not resolving issues." (*Id.*) Based on these allegations, the Court

15

construes Plaintiff's complaint to raise a Fourteenth Amendment due process claim regarding his use of the grievance procedure at ICF.

Various courts have repeatedly held that there exists no constitutionally protected due process right to an effective prison grievance procedure. *See Hewitt v. Helms*, 459 U.S. 460, 467 (1983); *Walker v. Mich. Dep't of Corr.*, 128 F. App'x 441, 445 (6th Cir. 2005); *Argue v. Hofmeyer*, 80 F. App'x at 430; *Young v. Gundy*, 30 F. App'x 568, 569–70 (6th Cir. 2002); *see also Antonelli v. Sheahan*, 81 F.3d 1422, 1430 (7th Cir. 1996); *Adams v. Rice*, 40 F.3d 72, 75 (4th Cir. 1994) (collecting cases). Michigan law does not create a liberty interest in the grievance procedure. *See Olim*, 461 U.S. at 249; *Keenan v. Marker*, 23 F. App'x 405, 407 (6th Cir. 2001); *Wynn v. Wolf*, No. 93-2411, 1994 WL 105907, at *1 (6th Cir. Mar. 28, 1994). Plaintiff makes no allegations that Defendant Gaudio had any personal involvement in the ICF grievance process and, regardless, Plaintiff has no liberty interest in the grievance process and was not deprived of due process.

Accordingly, Plaintiff's Fourteenth Amendment due process claims regarding his use of the grievance procedure at ICF will be dismissed for failure to state a claim.

## Conclusion

Having conducted the review required by the PLRA, the Court determines that Plaintiff's complaint will be dismissed for failure to state a claim, under 28 U.S.C. §§ 1915(e)(2) and 1915A(b), and 42 U.S.C. § 1997e(c). The Court must next decide whether an appeal of this action would be in good faith within the meaning of 28 U.S.C. § 1915(a)(3). *See McGore v. Wrigglesworth*, 114 F.3d 601, 611 (6th Cir. 1997). For the same reasons the Court concludes that Plaintiff's claims are properly dismissed, the Court also concludes that any issue Plaintiff might

raise on appeal would be frivolous. *Coppedge v. United States*, 369 U.S. 438, 445 (1962).

Accordingly, the Court certifies that an appeal would not be taken in good faith.

A judgment consistent with this opinion will be entered.


Dated:    July 2, 2026                             /s/ Sally J. Berens
                                                   SALLY J. BERENS
                                                   United States Magistrate Judge

17